
SEALED

CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

JUL 11 2019

JULIA C. DUDLEY, CLERK
BY: /s/ A. [illegible]
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
for the
Western District of Virginia

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

9 Eagle Ridge Lane, Galax, Virginia

) Case No. 1:19mj87
)
)
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Western_____ District of _____Virginia_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, USC, 922(d)(1); Title 26, USC 5861(d) | Sell/give firearm to a person knowing or having reasonable cause to believe that such person has been convicted of a crime punishable by imprisonment for a term exceeding one year; receives/possesses an unregistered firearm |

The application is based on these facts:

See Attachment C

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_/s/ J. Tab_
*Applicant's signature*

Jonathan Tabor  ATF S.A.
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/11/19

City and state: Abingdon, VA

_/s/ Pamela Meade Sargent_
*Judge's signature*

Pamela Meade Sargent  USMJ
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

1. Upon information and belief, the residence of Tony Ray THOMPSON located at 9 Eagle Ridge Lane, Galax, Virginia is presently being used in furtherance of federal firearms violations, specifically Title 18, USC 922(d)(1) "Any person sells/gives a firearm to a person knowing or having reasonable cause to believe that such person has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year" and Title 26 USC 5861(d) "Receive/Possess an NFA firearm not registered to him in the National Firearms Registration and Transfer Record."

2. I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) from December 2009 to the present. Prior to becoming an ATF Agent, I served as a State Trooper with the West Virginia State Police from 2003-2009. I have received training at the West Virginia State Police Academy, Federal Law Enforcement Training Center (FLETC), and the ATF National Academy in various investigative techniques to include preparation of search warrants. As a State Trooper and Special Agent, I have participated in numerous investigations involving the seizure of various firearms, controlled substances, the seizure of related records and other types of evidence that document a criminal organization's activities and have utilized a variety of investigative techniques and resources, including physical and electronic surveillance, confidential informants and cooperating sources.

3. The information contained in this affidavit is based solely on my personal knowledge and information provided to me by other law enforcement officers and individuals. The information in this affidavit is provided for the limited purpose of establishing probable cause. The information is not a complete statement of all the facts related to this case.

## PROBABLE CAUSE

4. On June 18, 2019, a confidential informant, hereafter referred to as the (CI), contacted members of the Twin County HIDTA Drug Task Force (DTF) about an individual distributing firearms to prohibited persons.

5. The CI stated he had purchased multiple firearms in the past from Tony Ray THOMPSON of 9 Eagle Ridge Lane, Galax, Virginia. THOMPSON was aware the CI had served time in prison, was a convicted felon, and therefore could not legally possess firearms due to his criminal past. The CI mentioned he had purchased firearms from THOMPSON while being prohibited and had shot fully-automatic firearms with THOMPSON during his ten-year relationship with THOMPSON. The CI advised members of the Twin County DTF he had communicated with THOMPSON about several firearms he possessed and could purchase firearms directly from THOMPSON.

6. On June 18, 2019, at the direction of law enforcement, the CI contacted THOMPSON about purchasing several firearms. THOMPSON agreed to sell the CI two SKS rifles and a .45 caliber pistol for $1200.00.

7. Following the agreement, the CI was provided a recording device and $1200.00 by the Twin County DTF. The CI was then surveilled by law enforcement as he traveled to THOMPSON's residence located at 9 Eagle Ridge Lane, Galax, Virginia. Once at the residence, the CI met with THOMPSON inside the residence. During the ensuing conversation, the CI and THOMPSON discussed the CI being prohibited from possessing firearms and the fact the CI could not purchase firearms through legal channels. THOMPSON told the CI if he were asked by law enforcement where the firearms came from he was not to tell them where they came from and if anyone asked him if he sold the firearms to the CI he would deny any knowledge of the transaction. THOMPSON stated this was the same agreement he had with his neighbors should any firearms he sold be recovered.

8. At the conclusion of the transaction, THOMPSON collected the firearms and several magazines and demonstrated how to load the 100 round drum magazine. THOMPSON also inquired if the CI would be interested in purchasing a ballistic vest he owned for $200.00 that was designed to stop rifle rounds.

9. Following the purchase, the CI left the residence and was surveilled by law enforcement to a pre-determined location where the evidence was secured. The following evidence was purchased from THOMPSON on June 18, 2019:
   - Norinco SKS 7.62 caliber rifle, serial number 24001963B
   - Norinco SKS 7.62 caliber rifle, serial number 22029047
   - Box containing 12 SKS magazines

- Taurus International .45 caliber pistol, serial number NYC69117
- 13 rounds of 7.62 ammunition
- 17 rounds of .45 caliber ammunition



10. An NCIC query on the aforementioned firearms revealed the purchased Norinco SKS rifle with serial number 29047 was reported stolen by the Bedford County Sheriff's Office in Shelbyville, TN. The date of entry was 1996.

11. On June 25, 2019, the CI met with members of the Twin County DTF after arranging a second purchase of firearms from THOMPSON. THOMPSON agreed to sell three pistols and a ballistic vest to the CI for $650.00

12. The CI was provided a recording device and $650.00 by the Twin County DTF. The CI was then surveilled by law enforcement to the THOMPSON's residence. Once inside the residence, the CI and THOMPSON engaged in a conversation about firearms and the ballistic vest. THOMPSON stated he was 80% sure one of the firearms wasn't stolen and the ballistic vest had been modified to a level 4 and could stop rifle rounds. THOMPSON stated he got one of the firearms from a boy who had a rough past but was going to church now so as far as he knew the firearm was not stolen. Following the purchase, the CI left the residence and was surveilled by law enforcement to a pre-determined location where the evidence was secured. The following evidence was purchased from THOMPSON on June 25, 2019:
    - Cobra .380 caliber, serial number CP058862
    - Heritage Revolver .22 caliber, serial number F08753
    - Rossi Revolver, serial number 57499

- Ballistic vest with ceramic plate.



13. Following the purchase, the CI was interviewed about his interactions with THOMPSON. The CI stated he observed two additional firearms inside the home: a 1911 style pistol, and a pistol grip shotgun. He advised THOMPSON asked if he wanted to purchase the shotgun. The CI added THOMPSON had a large safe inside the home and cabinets containing numerous firearms parts.
14. The CI stated in 2009-2010 THOMPSON took in an AR-15 rifle that had been stolen during a local burglary by Cody Sizemore. The CI advised THOMPSON had his Vietnam friend change several parts to the rifle but the AR-15 rifle was still present in THOMPSON's home and he could identify it because it had originally been painted in a desert camouflage color but had been repainted black. The CI also mentioned THOMPSON was in possession of a full-auto AK-47 rifle. The CI advised he had personally seen the rifle inside the residence and had observed a third position on the rifle's selector switch, which would indicate the capability to function in a fully-automatic mode. The CI advised this rifle was also currently present inside THOMPSON's residence.
15. A search of ATF National Firearms Act (NFA) Database revealed THOMPSON does not have any machine guns or silencers registered to him.
16. I know through my training, knowledge and experience, including previous investigations and discussions with other agents, that persons involved in the illegal distribution of firearms and narcotics often keep and maintain records of their various illegal activities. Such records are

regularly concealed in places considered secure by traffickers, including their automobile, residence, office, on his/her person, in warehouses and storage lockers. These records take various forms. Documents commonly concealed by traffickers, include but are not limited to notes in code, deposit slips, wired money transactions, savings pass books, hidden bank accounts, photographs of co-conspirators, various forms of commercial paper, personal address books, notebooks, records, receipts, ledgers, travel receipts (rental receipts, airline tickets, bus tickets, and/or train tickets) both commercial and private, money orders and other papers relating to the ordering, transportation, sale and distribution of controlled dangerous substances or other such documents which will contain identifying data on the co-conspirators. Persons involved in narcotics and firearms trafficking often maintain ledgers or comparable records documenting transactions and supply sources, as well as receipts for firearms purchases, firearms range time and boxes from firearm purchases. Those involved in narcotics and firearms trafficking also often keep the proceeds from their narcotics and firearms trafficking, and/or the financial records reflecting the proceeds, in their residences.

17. In addition, based on my knowledge, training and experience, firearms traffickers frequently use cellular telephones, communication devices, and other electronic media storage to further their illegal activities and frequently maintain numerous such electronic devices in an effort to conceal their activities. Based upon your affiant's training, experience and participation in this and other narcotics investigations, I know the following:

    a. Firearms traffickers frequently maintain books, ledgers, records and other documents relating to the manufacture, transportation, possession, and distribution of controlled substances. Such documentation is frequently maintained where the traffickers have ready access to it, including their homes, offices and electronic devices such as cellular phones, pages, personal digital assistants ("PDAs"), or "smart" phones.

    b. Firearm traffickers commonly maintain books, records and other documents or items that identify and contain the names, addresses and/or telephone or pager numbers of associates in their narcotics trafficking activities, including, but not limited to cellular telephones, pagers, PDAs, and "smart" phones.

c. Firearm traffickers often use cellular telephones, pagers, PDAs, or "smart" phones, to conduct their business and to store information such as names, addresses, phone numbers, and logs of firearms sales.

d. Firearm traffickers often also keep records of their activities, including the amounts provided and any funds owed. They also generally keep information about co-conspirators on-hand, including phone numbers and other contact information.

## CONCLUSION

Based upon the facts set forth above, I believe there is probable cause for the issuance of a search warrant for the residence of Tony Ray THOMPSON, located at 9 Eagle Ridge Lane, Galax, Virginia and any vehicles located on the property of located at 9 Eagle Ridge Lane, Galax, Virginia within the Western District of Virginia.

I declare under the penalty of perjury that the foregoing is true and accurate to the best of my knowledge and belief. Executed on July 11th, 2019.

_____        7/11/19
Jonathan A. Tabor, Special Agent, (ATF)        Date

Subscribed and sworn to before me, this the 11th day of July, 2019 in Abingdon, Virginia

Judge Pamela Meade Sargent
USMJ